# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EXTENET SYSTEMS, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **THE CITY OF EAST ORANGE et al.,** <br><br> **Defendants.** | Civ. No. 2:19-cv-21291 (WJM) <br><br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

This matter is an administrative appeal brought under the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 151 *et seq.*, of the City of East Orange's denial of plaintiff ExteNet Systems, Inc.'s ("ExteNet") applications to install Small Wireless Facilities on utility poles throughout the city. ExteNet filed a Complaint for declaratory and injunctive relief against the City of East Orange, the East Orange City Council, Mayor Ted R. Green, and City Council members in their official capacities (collectively, "Defendants").[1] ExteNet now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pl. Br., ECF No. 16. The Court did not hear oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, ExteNet's motion is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND[2]

Congress enacted the TCA "to provide a pro-competitive, de-regulatory national policy framework" that would encourage the deployment of advanced, competitive telecommunications networks and services to retail consumers across the country. *Ogden*

---

[1] ExteNet has named the following East Orange City Council members as Defendants in this action in their official capacities, and not as individuals: Christopher Awe, Mustafa A. Brent, Tameika Garrett-Ward, Casim L. Gomez, Alicia Holman, Christopher D. James, Jacquelyn E. Johnson, Bergson Leneus, Amy Lewis, and Quilla E. Talmadge. Compl., ECF No. 1.

[2] Unless the Court states otherwise, the facts derived from ExteNet's Consolidated Statement of Material Facts ("SOMF") are undisputed. *See* SOMF, Pl. Reply, ECF No. 23-1. The Court will also cite to Defendants' Statement of Additional Material Facts and Plaintiff's Counter Statement (together, "DSOMF") found within the Consolidated Statement. *See* DSOMF, Pl. Reply, ECF No. 23-1.

1

*Fire Co. No. 1 v. Upper Chichester TP.*, 504 F.3d 370, 377 (3d Cir. 2007) (internal citation and quotations omitted). "The Act generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communications facilities, but it imposes 'specific limitations' on that authority." *T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293, 300 (2015) (quoting *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005)); *see* 47 U.S.C. § 332(c)(7)(B). One such limitation is that any person adversely affected by a state or local government's final action or failure to act on an application to construct or modify personal wireless facilities is entitled to seek judicial review in a court of competent jurisdiction within thirty (30) days after the final action or failure act. § 332(c)(7)(B)(v). In this case, ExteNet seeks judicial review of Defendants' actions, and inaction, resulting in the denial of sixteen Small Wireless Facilities applications.

ExteNet is a neutral host infrastructure provider for wireless service providers like Verizon Wireless, AT&T, Sprint, and T-Mobile. SOMF ¶ 1, Pl. Reply, ECF No. 23-1; Compl. ¶ 55, ECF No. 1. Service providers contract with and pay ExteNet to use its distributed network facilities to provide improved and expanded wireless coverage to consumers. Compl. ¶¶ 53, 55, ECF No. 1. Network facilities are installed by placing a fiber optic cable, small antennas, and supporting equipment onto a utility pole or other structure in public rights-of-way. *Id.* ¶ 54.

On April 4, 2019, to fulfill contractual obligations to a wireless service provider seeking to densify its network, ExteNet filed six applications (the "April applications") with Defendants to install distributed network facilities, known as Small Wireless Facilities due to their dimensions, on utility poles around East Orange. SOMF ¶¶ 3-5, Pl. Reply, ECF No. 23-1. The Small Wireless Facilities and the services they provide are akin to the Xfinity Mobile wireless hotspots that Comcast has constructed on East Orange's public rights-of-way with the city's approval. *Id.* ¶¶ 8-11.

Once ExteNet filed the April applications, the relevant Federal Communications Commission ("FCC") Orders required Defendants to approve or deny them within a sixty-day timeframe or "shot clock" period. *Id.* ¶ 7. The deadline for Defendants to act was June 3, 2019. *See* First Tolling Agreement, Pl. Br., ECF No. 16-11. One month later, on July 3, 2019, the parties executed the First Tolling Agreement, agreeing to extend the date by which Defendants had to act on the applications to August 1, 2019. *Id.* On August 29, 2019, the parties executed a Second Tolling Agreement, agreeing to further extend the date to October 1, 2019. *See* Second Tolling Agreement, Pl. Br., ECF No. 16-12. On October 28, 2019, ExteNet resubmitted copies of its April applications after the originals had been lost or discarded and submitted ten new applications for Small Wireless Facility installations (the "October applications"). SOMF ¶¶ 17-18, Pl. Reply, ECF No. 23-1.

On October 31, 2019, the parties executed a Third Tolling Agreement, under which Defendants agreed "to take action on and to adopt a resolution with respect to the April applications no later than November 12, 2019," the date of a City Council meeting, and "to

2

provide ExteNet with a copy of the resolution no later than November 15, 2019." *Id.* ¶ 22; *see* Third Tolling Agreement, Pl. Br., ECF No. 16-13. The April applications were placed on City Council's November 12, 2019 meeting agenda but were removed from consideration without notice or explanation to ExteNet. SOMF ¶ 24, Pl. Reply, ECF No. 23-1.

Nonetheless, City Council members heard a description of ExteNet's proposal from its representative at the November 12 meeting and posed questions to the representative about the technology. *See* Nov. 12, 2019 Meeting Minutes at 3-9, Pl. Br., ECF No. 16-14. Several Council members asked about radiation exposure and potential health hazards associated with 4G and 5G technology. *Id.* Councilwoman Johnson asked how the technology would be installed and situated on utility poles on community members' property. *Id.* at 4. Councilwoman Holman asked whether approval for this technology had been sought from and approved by other New Jersey towns. *Id.* at 5. Councilwoman Holman also asked about the height of the replacement utility poles needed to support the technology and whether ExteNet would need to install new wiring. *Id.* Councilman Leneus asked why and how ExteNet determined East Orange required the installation of Small Wireless Facilities. *Id.* at 6. Following the meeting, ExteNet submitted supplemental information to Defendants based on their questions. SOMF ¶¶ 30-31, Pl. Reply, ECF No. 23-1.

On December 9, 2019, at the City Council meeting, Defendants voted on and unanimously denied ExteNet's April applications. *Id.* ¶ 32. When ExteNet's representative asked whether the October applications were also denied, Councilwoman Johnson answered affirmatively. *Id.* ¶ 33. The parties did not discuss why the applications were denied, *see generally* Dec. 9, 2019 Meeting Minutes, ECF No. 16-15, and Defendants did not subsequently issue a written explanation or decision for the denials. SOMF ¶ 35, Pl. Reply, ECF No. 23-1.

Based on the foregoing, ExteNet filed a Complaint against Defendants seeking declaratory and injunctive relief for alleged violations of the TCA and New Jersey law. The Complaint sets forth six counts: unreasonable delay and failure to act in violation of 47 U.S.C. § 332(c)(7)(B)(ii) (Count I); unlawful prohibition on the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) (Count II); prohibition of services in violation of 47 U.S.C. § 253(a) (Count III); lack of substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (Count IV); breach of contract (Count V); and violations of New Jersey state law governing public utilities, N.J.S.A. 48:3-18, 48:3-19, and 48:3-20 (Count VI).[3] Compl. ¶¶ 86-141, ECF No. 1. Defendants filed an Answer in response. Answer, ECF No. 3.

---

[3] Count VII of the Complaint is a stand-alone count for declaratory and injunctive relief. Compl. ¶¶ 142-154, ECF No. 1. Because "such claims are requests for remedies, and not independent causes of action," the Court will address Count VII's requested relief in the section on remedies

3

ExteNet now moves for summary judgment on the entirety of its Complaint under several legal theories. Defendants oppose the motion, Defs. Opp'n Br, ECF No. 22, and ExteNet filed a reply. Pl. Reply, ECF No. 23.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57.

## III. DISCUSSION

Before the Court addresses the merits of the parties' arguments, the parties have identified undisputed material facts that raise concern about the ripeness of ExteNet's causes of action for the October applications.

The TCA requires state and local governments to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed . . . ." 47 U.S.C. § 332(c)(7)(B)(ii). The FCC defines "a reasonable period of time" in terms of a "shot clock." *See In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.* ("2018 Third Report and Order"), 33 F.C.C. Rcd. 9088, ¶ 104 (2018). The parties agree that filing the type of applications at issue here, where Small Wireless Facilities will be installed on existing, albeit modified, utility poles, triggers a sixty-day shot clock. *See* 2018 Third Report and Order at ¶ 104; SOMF ¶ 7, Pl. Reply, ECF No. 23-1; Pl. Br. at 14-

---

herein. *ASAH v. N.J. Dep't of Educ.*, No. 16-3935 (FLW) (DEA), 2017 WL 2829648, at *12 (D.N.J. June 30, 2017) (collecting cases).

4

15, ECF No. 16-1. This means that the locality has sixty days from the day an application is filed to grant or deny the application and issue any required permits. 2018 Third Report and Order at ¶ 104; 47 C.F.R. § 1.6003(c).

If the locality denies a request to place, construct, or modify personal wireless service facilities, the denial must be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). Indeed, in a more recent Opinion issued prior to this litigation, the Court of Appeals for the Third Circuit held that "a denial must be in writing to be a final action, the issuance of [which] is the government 'act' ruled by the shot clock." *T-Mobile Ne. LLC v. City of Wilmington, Delaware*, 913 F.3d 311, 323 (3d Cir. 2019). If the locality does not issue a final written decision within the presumptively reasonable time period, the locality's inaction constitutes a failure to act. 47 U.S.C. § 332(c)(7)(B)(v); 2018 Third Report and Order at ¶ 117. A final action or a failure to act triggers the thirty-day period within which the injured party may seek judicial review. 47 U.S.C. § 332(c)(7)(B)(v).

Applying this framework here, it is undisputed that following the December 9, 2019 City Council vote denying the April and October applications, Defendants did not issue a written denial. SOMF ¶ 35, Pl. Reply, ECF No. 23-1. Consequently, Defendants' oral declaration denying the applications cannot constitute a final action triggering ExteNet's right to judicial review. *See T-Mobile Ne. LLC*, 913 F.3d at 319. Instead, whether ExteNet's causes of action are ripe depends on whether Defendants failed to act on the applications and whether ExteNet then initiated this action within thirty days after the failure to act.

As to the April applications, ExteNet filed them on April 4, 2019, initiating the sixty-day shot clock for Defendants to grant or deny them. Defendants had until June 3, 2019, to act but did not do so. Instead of seeking judicial review, ExteNet and Defendants proceeded to enter into three separate Tolling Agreements extending the shot clock deadline to August 1, 2019, and then to October 1, 2019, and finally to November 12, 2019.[4] Those deadlines passed without Defendants approving or denying the April applications. Defendants' inaction by November 12 therefore constitutes a failure to act under the TCA and triggers ExteNet's right to judicial review of the shot-clock violation. *See* 47 U.S.C. §§ 332(c)(7)(B)(ii), 332(c)(7)(B)(v). Since ExteNet filed the present action on December 11, 2019, within the required thirty days, the claims pertaining to the April applications were ripe for review.

As to the October applications, ExteNet filed the applications on October 28, 2019. Under the sixty-day shot clock, Defendants had until December 27, 2019, to grant or deny them. The Court has already found that Defendants' oral declaration denying the applications on December 9, 2019, cannot constitute a final action giving way to judicial review. When ExteNet filed the present action on December 11, 2019, however,

---

[4] Parties may enter into Tolling Agreements to alter the sixty-day shot clock. 47 C.F.R. § 1.6003(d).

Defendants still had sixteen days left under the shot clock to take action on the October applications. Because there was neither a final action nor a failure to act on the October applications as of December 11, ExteNet's claims as to these applications were not yet ripe for review.

The Court will address ExteNet's motion for summary judgment as it applies to the April applications. For purposes of clarity, the Court will organize its analysis by the Counts of the Complaint and not, as the parties have organized their briefing, by legal theory.

### A. Defendants Failed to Act on the April Applications in Violation of 47 U.S.C. § 332(c)(7)(B)(ii) (Count I)

Count I of the Complaint alleges Defendants failed to act on the April applications within a reasonable time in violation of 47 U.S.C. § 332(c)(7)(B)(ii). The Court's ripeness analysis above found that Defendants' inaction by November 12, 2019, constitutes a failure to act and is a violation of the shot clock as extended by the parties' three Tolling Agreements.

Defendants argue that they could not make an informed decision at the November 12, 2019 City Council meeting until ExteNet's representative provided supplemental information in response to questions posed at the meeting. Defs. Opp'n Br. at 6, ECF No. 22. Defendants fail to demonstrate, however, how such circumstances cure a shot clock violation, particularly when Defendants expressly agreed to take action on the April applications on November 12 and had seven months prior to that date to determine whether supplemental information was necessary. Defendants failed to act on ExteNet's April applications within a reasonable time in violation of 47 U.S.C. § 332(c)(7)(B)(ii). ExteNet is therefore entitled to summary judgment in its favor on Count I.

### B. Defendants' Failure to Act Constitutes a Prohibition of Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) and § 253(a) (Counts II and III)

Counts II and III of the Complaint allege Defendants' delay in acting on the April applications prohibited the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) and § 253(a).

Under § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." Similarly, § 253(a) states that state and local statutes, regulations, or legal requirements may not "prohibit or have the effect of prohibiting the ability of any entity to

6


provide any interstate or intrastate telecommunications service."[5] The FCC has declared that a state or local government's failure to act within "the Small Wireless Facility shot clock . . . function[s] not only as a Section 332(c)(7)(B)(v) failure to act but also amount[s] to a presumptive prohibition on the provision of personal wireless services within the meaning of Section 332(c)(7)(B)(i)(II)." 2018 Third Report and Order at ¶¶ 118-19.

In light of this presumptive prohibition, ExteNet argues that Defendants' delay in resolving the April applications prevented Defendant from entering the market, densifying coverage for wireless service providers, and competing with Comcast's Xfinity Mobile service. Pl. Br. at 19, ECF No. 16-1. Defendants argue, in essence, that their inability to make an informed decision on the applications at the November 12, 2019 City Council meeting is a valid reason for their delay and the resulting denial. Defs. Opp'n Br. at 7, ECF No. 22. The Court found this argument unpersuasive to cure Defendants' shot clock violation; it does not also overcome the presumption that the effect of Defendants' failure to act was a prohibition of ExteNet's services. ExteNet is therefore entitled to summary judgment in its favor on Counts II and III.

### C. Plaintiff's Allegation that Defendants Violated the Substantial Evidence Requirement Under 47 U.S.C. § 332(c)(7)(B)(iii) is Moot (Count IV)

Count IV of the Complaint alleges that Defendants' denial of the April applications was not supported "by substantial evidence contained in a written record" as required under 47 U.S.C. § 332(c)(7)(B)(iii). The Supreme Court has interpreted this requirement to mean that when localities deny siting applications, they must state the reasons for the denial "clearly enough to enable judicial review." *T-Mobile S., LLC*, 574 U.S. at 303. The reasons need not be provided in the same letter or notice as the denial, but they must be stated "with sufficient clarity in some other written record issued essentially contemporaneously with the denial." *Id.* at 307.

Count IV requires the Court to consider the evidence and reasoning behind Defendants' denial of the April applications. Undertaking such an analysis here is moot because Defendants did not take final action on the applications within the meaning of the TCA. *See T-Mobile Ne. LLC*, 913 F.3d at 319 ("[If] a denial is not in writing, there is something left for the agency to do. . . . [I]n those zoning decisions governed by the TCA, a locality's oral declaration of a denial is 'of a merely tentative or interlocutory nature.'"). Defendants never issued a written denial of the applications following the December 9, 2019 vote. ExteNet's allegations in Count IV are moot and the Court will deny summary judgment.

---

[5] The Third Circuit has not yet decided the issue of whether 47 U.S.C. § 253 implies a private right of action, *New Jersey Payphone Ass'n, Inc. v. Town of W. New York*, 299 F.3d 235, 240-41 (3d Cir. 2002), and the parties do not challenge the statute's applicability here. The Court will assume, for purposes of resolving the instant motion, that the statute applies.

The Court notes, however, that to the extent Defendants believed their December 9, 2019 vote to be their final action on the April applications, the record does not reveal with sufficient clarity the precise reasons why Defendants denied them. The November 12, 2019 City Council meeting minutes reflect that Defendants posed questions to the ExteNet representative that evince concern about health hazards, utility pole height, and the installation of 4G instead of 5G. *See* Nov. 12, 2019 Meeting Minutes 3-9, Pl. Br., ECF No. 16-14. Defendants argue that they could not make an informed decision until ExteNet provided supplemental information in response to their questions. Without Defendants identifying their reasoning behind their December 9 denial, the Court is left to parse through the parties' November 12 colloquy and make assumptions about the reasoning behind the vote.

## D. Defendants Breached the Third Tolling Agreement When They Failed to Act on the April Applications by November 12, 2019 (Count V)

Count V of the Complaint alleges a breach of contract claim against Defendants for failing to act on the April applications by the November 12, 2019 deadline agreed upon in the Third Tolling Agreement. ExteNet seeks damages on this Count for loss of revenue and additional costs and fees. Compl. ¶¶ 132-133, ECF No. 1.

ExteNet argues that the Third Tolling Agreement required Defendants to act by the November 12 deadline, and Defendants argue in opposition that the language of the Third Tolling Agreement does not support the relief sought here. Pl. Br. at 26-27, ECF No. 16-1; Defs. Opp'n Br. at 10, ECF No. 22.

Theoretically, "a tolling agreement creates enforceable rights between parties, and is the type of contract that private parties regularly enter into to freeze their respective rights in contemplation of future litigation." *Figueroa v. Ministry for Foreign Affairs of Sweden*, 222 F. Supp. 3d 304, 317 (S.D.N.Y. 2016). When the parties signed the Third Tolling Agreement, they agreed that ExteNet would postpone the period within which it could seek judicial review of Defendants' inaction, and, in exchange, Defendants agreed to act on ExteNet's April applications by a date certain. Third Tolling Agreement, Pl. Br., ECF No. 16-13. The Court has already found that Defendants failed to act on ExteNet's applications by the agreed upon date. ExteNet is therefore entitled to summary judgment on its breach of contract claim.

In lieu of awarding damages, the Court will order Defendants to take action on ExteNet's applications as Defendants agreed to do under the Third Tolling Agreement. The Court finds this to be the most appropriate outcome where Defendants have not demonstrated a genuine issue of material fact exists as to the breach of contract claim, but where Defendants have not offered an argument as to whether such a claim for damages can be brought against the locality and its officials in this case. Moreover, this outcome is consistent with the injunctive relief to which ExteNet is entitled under the TCA as described in the section on remedies below.

### E. ExteNet Does Not Set Forth a Viable Cause of Action Under New Jersey Law (Count VI)

Count VI of the Complaint alleges that Defendant's conduct violates N.J.S.A. 48:3-18, 48:3-19, and 48:3-20, which describe a public utility's property interest in a locality's infrastructure, like utility poles, but which otherwise does not create a viable, private cause of action. Neither party has raised or addressed these provisions in their briefing on the present motion. The Court will deny summary judgment on Count VI on the grounds Count VI is moot.

### F. ExteNet's Remedy

Having demonstrated that Defendants failed to act on the April applications within a reasonable time, effectively prohibiting the provision of personal wireless services, ExteNet seeks declaratory and injunctive relief in the form of an Order compelling Defendants to grant the April applications and issue the permits and approvals necessary for ExteNet to install Small Wireless Facilities throughout East Orange. Compl. ¶¶ 142 - 154, ECF No. 1. The FCC views, "in the context of Small Wireless Facilities, . . . that the most appropriate remedy in typical cases involving a violation of Sections 332(c)(7)(B)(i)(II) and/or 332(c)(7)(B)(ii) is the award of injunctive relief in the form of an order to issue all necessary authorizations." 2018 Third Report and Order ¶ 123. The Court finds that this is the appropriate remedy here, where Defendants failed to exercise their authority within the TCA's reasonable time to act.

As to ExteNet's October applications, the Court will direct the parties to schedule a conference with the Magistrate Judge to resolve the ripeness issue, if necessary.

### IV. CONCLUSION

For the reasons stated above, ExteNet's motion for summary judgment, ECF No. 16, is **GRANTED** as to Counts I, II, III, and V, and is **DENIED** as to Counts IV, VI, and VII, which the Court has determined are moot.

An appropriate Order shall follow.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: December 9, 2020